**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tracy Medrano,<br><br>  Plaintiff,<br><br>v.<br><br>Carrington Foreclosure Services LLC, et al.,<br><br>  Defendants. | No. CV-19-04988-PHX-DWL<br><br>**ORDER** |

Pending before the Court are (1) a motion to dismiss by Carrington Foreclosure Services, LLC ("CFS") (Doc. 10), and (2) a motion to dismiss by Bank of America, N.A. ("BANA") and Recontrust Company ("Recontrust") (Doc. 15), which CFS has joined (Doc. 16). For the following reasons, the former motion will be stricken based on non-compliance with Local Rule 12.1(c), the latter motion will be granted, and this action will be terminated.

**BACKGROUND**

I.   Factual Background

The facts alleged in the complaint, and as set forth in CFS's unopposed request for judicial notice (Doc. 11) and in the judicially noticeable documents referenced in and/or attached to the complaint and the BANA/Recontrust motion to dismiss,[1] are as follows.

---

[1] "When ruling on a Rule 12(b)(6) motion to dismiss, . . . [a] court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). The only limitation, at least at the motion-to-dismiss stage, is that the Court may not take judicial notice of any disputed facts contained within such records. *See, e.g., Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *Lee v.*

On July 13, 2009, Plaintiff Tracy Medrano executed a written agreement with Paramount Residential Mortgage Group to obtain a mortgage loan in the amount of $157,102. (Doc. 1 at 10 ¶ 11.) "To secure repayment of the loan, and as part of the same transaction, [Medrano] made and executed a written deed of trust . . . ." (*Id.*) Great American Title Agency was the original trustee and Mortgage Electronic Registration Systems the original beneficiary. (*Id.* at 27.) The property is located at 16544 West Grant Street, Goodyear, Arizona. (*Id.* at 28.)

On October 6, 2011, BANA became the trust beneficiary. (Doc. 15 at 12.)

On July 17, 2012, BANA recorded a substitution naming Recontrust the successor trustee. (Doc. 1 at 37.) The complaint alleges this substitution was "unlawful[]" and "without notice" to Medrano. (*Id.* at 11 ¶ 15.)

That same day, Recontrust recorded a notice of trustee's sale. (*Id.* at 39.) The complaint alleges this recording was also "unlawful[]" and "without notice" to Medrano. (*Id.* at 11 ¶ 17.) Two days later, Recontrust cancelled the notice of sale. (Doc. 15 at 14.)

On or about May 29, 2013, BANA and Medrano executed a loan modification agreement. (Doc. 1 at 43-44.) This agreement increased the loan principal to $171,295.55. (*Id.*) Although the complaint does not explain the origin of this agreement,[2] it alleges that BANA had "no standing to execute" the document and the agreement "did not clear any lien or encumbrance on the real property." (*Id.* at 11-12 ¶ 19.)

On June 23, 2015, BANA and Medrano entered into another loan modification agreement that decreased the principal to $139,697.62. (*Id.* at 46-52.) The complaint alleges this modification agreement was legally deficient for the same reasons as the previous one. (*Id.* at 12 ¶ 20.)

On February 8, 2017, BANA assigned its interest as beneficiary of the deed of trust

---

*City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001).

[2] BANA asserts in its motion that the new principal capitalized past accrued arrearages. (Doc. 15 at 3.) Although this is a plausible explanation for the increased principal and the cancellation of the notice of sale and is not inconsistent with any facts Medrano has provided, the Court cannot take this fact into account without converting the motion to dismiss into a motion for summary judgment.

to Carrington Mortgage Services, LLC ("CMS") (which is a different entity than CFS, the defendant named in the complaint). (*Id*. at 56.) The complaint alleges, however, that BANA "[did] not have standing or the legal authority to record or cause the purported assignment of the deed of trust under [Medrano's] Note to be recorded" because BANA was "not the holder of [Medrano's] Note in due course" and thus the assignment was "fraudulent." (*Id*. at 12 ¶ 23.) The complaint further alleges that BANA did not hold the note in due course because it was "not a party to the contract that secured [Medrano's] Note and deed of Trust" and "[did] not have any lawful and original assignment instruments from the lender." (*Id*. at 12-13 ¶ 24.)

On February 5, 2019, CFS was substituted as the trustee.[3] (*Id*. at 58.) The complaint alleges this substitution was "invalid . . . and of no force and effect" because CMS lacked "standing or legal authority" to complete this substitution. (*Id*. at 13 ¶ 27.)

On February 12, 2019, CFS recorded a Notice of Trustee's Sale. (*Id*. at 61-62.) The complaint alleges this recording was "unlawful[]" and "without notice" to Medrano. (*Id*. at 13 ¶ 28.)

To sum up, the complaint alleges that, over the course of approximately 10 years, legal and beneficial ownership of Medrano's deed of trust changed hands numerous times, no such change was legally valid, and both attempted foreclosure sales were unlawful and without notice to Medrano. Additionally, over these 10 years, all defendants "act[ed] in concert and conspiracy" to "conceal[] the fact that the loans were "securitized," which had a "materially negative effect on [Medrano]." (*Id*. at 15 ¶ 34.) Had Medrano known the "truth" about the agreements, she "would not have entered into the Loan agreement." (*Id*. at 15 ¶ 35.) This concealment also "prevented [her] from discovering . . . the wrongdoing complained of herein." (*Id*. at 11 ¶ 18.) Finally, both as a result of the "constant emotional

---

[3] Although the complaint alleges that CFS appointed itself to serve as the trustee (Doc. 1 at 13 ¶ 25), the recorded "Substitution of Trustee" document attached as an exhibit to the complaint suggests CMS authorized the substitution. (Doc. 1 at 58.) "Although we normally treat all of a plaintiff's factual allegations in a complaint as true, we need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (quotation omitted).

nightmare of losing her real Property" caused by the "fraudulent foreclosure proceedings," as well as the fact that "her title to the Property has been disparaged and slandered," Medrano has suffered "many sleepless nights, severe depression, lack of appetite, and loss of productivity at [her] place of employment." (*Id*. at 18 ¶¶ 53-56, 21 ¶¶ 70-72.)

Medrano requests special, compensatory, and punitive damages in an amount to be determined at trial, a "decree permanently enjoining defendants . . . from asserting any adverse claim to plaintiffs' title to the property," "disgorgement of all profits obtained by Defendants by virtue of their misconduct," "[r]estitution as allowed by law," attorney's fees and costs, costs of suit, and other relief the Court may deem proper. (*Id*. at 25.)

II. Procedural Background

On June 21, 2019, Medrano (who is proceeding pro se) initiated this action by filing a complaint in Maricopa County Superior Court. (Doc. 1 at 6.)

On August 19, 2019, BANA removed this action to federal court based on diversity jurisdiction. (Doc. 1 at 3 [citing 28 U.S.C. §§ 1332 and 1441].) The case was originally assigned to Judge Humetawa. (Doc. 2.)

On August 27, 2019, CFS filed a motion to dismiss. (Doc. 10.)

On September 3, 2019, the case was reassigned to the current judge. (Doc. 14.)

On September 9, 2019, BANA and Recontrust filed a motion to dismiss. (Doc. 15.) The following day, CFS filed a joinder in their motion. (Doc. 16.)

On September 26, 2019, Medrano responded to both motions to dismiss. (Docs. 18, 19.)

On October 3, 2019, BANA and Recontrust filed a reply. (Doc. 20.)

On October 7, 2019, CFS filed a reply in support of its motion, which also asserted that CFS was joining the BANA/Recontrust reply. (Doc. 21.)

**DISCUSSION**

I. Jurisdiction

In her response to the BANA/Recontrust motion to dismiss, Medrano argues the Court lacks subject matter jurisdiction because "Plaintiff is not a Federal court Plaintiff.

Plaintiff's complaint is not premised on any federal question." (Doc. 18 at 2.)

This argument is easily rejected. BANA removed the case based on diversity jurisdiction, not federal question jurisdiction. (Doc. 1 at 1.)

Furthermore, although Medrano doesn't address whether diversity jurisdiction exists here, the Court has independently reviewed the removal notice and is satisfied that it possesses jurisdiction. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441.

"Where the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy" satisfies the threshold stated in § 1332. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

Here, Medrano does not demand a specific dollar amount from BANA, Recontrust, and CFS. (Doc. 1 at 25.) Her complaint requests special and compensatory damages "in an amount to be determined by proof at trial," punitive damages and restitution "as allowed by law," and attorney's fees and costs of suit. (*Id.*) She also requests an order compelling the removal of any instrument that "could be construed as constituting a cloud upon Plaintiff's title," an order to "disgorge all amounts wrongfully taken," and, elsewhere, a "decree permanently enjoining defendants . . . from asserting any adverse claim to plaintiffs' [sic] title to the property which was secured by the Deed of Trust." (*Id.* at 25, 23.)

In the removal notice, BANA contends that Medrano seeks relief in excess of $75,000 because she "seeks an order enjoining the trustee's sale of real property valued in excess of $75,000 and which secures a loan with a remaining unpaid balance in excess of $75,000." (Doc. 1 at 2.) The complaint and attached exhibits fail to establish that this is, in fact, the *current* value of the home or outstanding balance. The most recent balance—as of July 9, 2015—was $139,697.62. (Doc. 1 at 46, 52.) Nevertheless, given that foreclosure proceedings are imminent, the Court can reasonably infer that the outstanding balance exceeds $75,000. Moreover, Medrano has not objected to the amount BANA alleges to be in controversy, and she seeks money damages, disgorgement of profits, and restitution on top of the injunction to prevent foreclosure. (Doc. 1 at 25.) As such, BANA has plausibly alleged an amount in controversy exceeding $75,000.

Next, there is diversity of citizenship. "All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. "[O]ne would sensibly 'locate' a national bank for the very same purpose, *i.e.,* qualification for diversity jurisdiction, in the State designated in its articles of association as its main office." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). BANA and Recontrust are national banks, so for purposes of diversity jurisdiction their citizenship is North Carolina and California, respectively. (Doc. 1 at 2.) CFS has its principal place of business in California, is incorporated in Delaware, and is held by a series of Delaware LLCs with principal places of business in California and Connecticut. (*Id.*) BANA alleges that Medrano is a citizen of Arizona, and she has not stated otherwise. (*Id.*) There is complete diversity of citizenship and the Court has subject matter jurisdiction over this case.

II. Local Rule 12.1(c)

Local Rule 12.1(c) provides that "[n]o motion to dismiss for failure to state a claim . . . will be considered or decided unless the moving party includes a certification that, before filing the motion, the movant notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party. . . . A motion that does not

contain the required certification may be stricken summarily." *Id.* Additionally, at the outset of this case, the Court issued a notice reminding the parties of their responsibilities under Local Rule 12.1(c). (Doc. 5.)

The motion to dismiss filed by BANA and Recontrust includes a Local Rule 12.1(c) certification. (Doc. 15 at 1-2.) Specifically, counsel for BANA and Recontrust certified that they "attempted to contact Plaintiff to confer regarding the Complaint's deficiencies and whether the deficiencies may be cured by amendment," but "Plaintiff failed to provide an email address or phone number, which limited Defendants' ability to contact Plaintiff." (*Id.*) The certification further provides that "counsel attempted to call Plaintiff at the phone number listed on Plaintiffs' loan application and sent Plaintiff a letter on Friday, August 23, 2019, requesting she call Defendants' counsel to discuss this matter," but "Plaintiff has not responded to Defendants' counsel's requests." (*Id.*)

CFS's motion, in contrast, does not contain a Local Rule 12.1(c) certification. Accordingly, CFS's motion will be stricken. (As discussed in Part IV *infra*, however, this doesn't affect the ultimate outcome.)

It should be noted that Medrano argues in her response to the BANA/Recontrust motion that "defendant failed to meet and confer before filing its motion." (Doc. 18 at 2.) This conclusory assertion, however, fails to address (let alone refute) the specific representations set forth in the BANA/Recontrust motion concerning defense counsel's attempts to contact Medrano. Accordingly, the Court is satisfied that counsel for BANA and Recontrust satisfied their obligations under Local Rule 12.1(c) and will proceed to consider their motion on the merits.

III. BANA And Recontrust's Motion To Dismiss

Medrano's complaint asserts six causes of action. Count I is a claim for "fraud in the concealment." (Doc. 1 at 14.) Count II is a claim for intentional infliction of emotional distress ("IIED"). (*Id.* at 16.) Count III is a claim for intentional misrepresentation. (*Id.* at 18.) Count IV is a claim for slander of title. (*Id.* at 20.) Count V is a claim for quiet title. (*Id.* at 22.) And Count VI is a claim for negligent misrepresentation. (*Id.* at 23.) Each claim is asserted against all three defendants.

In their motion, BANA and Recontrust characterize these claims as "vague theories" that are simply being asserted "to stall a valid foreclosure process." (Doc. 15 at 2.) As explained below, the Court agrees.

A. **Legal Standard**

BANA and Recontrust move to dismiss all six counts under Rule 12(b)(6). "[T]o survive a motion to dismiss" under this provision, "a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

Although the *Iqbal* pleading standard applies to pro se complaints, they "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). But while entitled to "great leeway," a pro se litigant's pleadings "nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

BANA and Recontrust also contend that because Counts I, III, and IV assert fraud-based claims, they are subject to Rule 9(b)'s heighted pleading requirements. (Doc. 15 at 4-6.) Although Medrano seems to acknowledge the Rule 9(b) applies to Counts I and III, she disputes whether it applies to Count IV, her claim for negligent misrepresentation. (Doc. 18 at 15-16.) The Court disagrees and concludes that Rule 9(b) applies to all three counts. *See, e.g., Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (Rule 9(b) applies to claims that are "grounded in fraud" or "sound in fraud"); *Estrada v.*

*Capella Univ., Inc.*, 2018 WL 1428155, *2 (D. Ariz. 2018) ("Claims for negligent misrepresentation must meet the particularity requirements of Rule 9(b).") (internal quotation marks omitted); *Sweeney v. Darricarrere*, 2009 WL 2132696, *12 n.109 (D. Ariz. 2009) ("Although the Ninth Circuit has suggested that negligent misrepresentation may be a non-fraudulent averment, [m]ost district courts within the Ninth Circuit have held that a [negligent misrepresentation claim is subject to the] heightened pleading requirements of Rule 9(b).") (citations and internal quotation marks omitted).

"Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess,* 317 F.3d at 1106 (internal quotation marks and citation omitted). This requires a plaintiff to plead "the who, what, when, where, and how of the misconduct charged" and "set forth what is false or misleading about a statement, and why it is false." *Id.* (internal quotation marks and citation omitted).

B. **Counts I, III, And IV**

One theory underlying Medrano's fraud-based claims (Counts I, III, and IV) is that BANA and Recontrust engaged in fraud by recording certain real estate documents that they knew (or should have reasonably suspected) were false. (*See, e.g.,* Doc. 18 at 2 ["[Defendants] caused fraudulent real estate documents that touch and concern[] Plaintiff's real property to be recorded in the Office of county recorder's office."]; *id.* at 13 ["Bank of America concealed the fact that it is not the Real party in interest and does not have any pecuniary interest in plaintiff's real property."].) Additionally, Medrano alleges her loan was improperly "securitized," "included in a pool with other notes," and "split into tranches." (Doc. 1 at 15 ¶ 34, 19 ¶ 59.)

As an initial matter, the complaint does not assert any *facts*—as opposed to formulaic labels and conclusory assertions—supporting these accusations. *Iqbal*, 556 U.S. at 679-80. Moreover, at least some of these allegations are contradicted by the judicially noticeable documents. As BANA and Recontrust argue in their motion, although Medrano attempts to "premise[] her fraud claims on the allegation that the foreclosing parties lacked

authority to do so pursuant to some undefined defaults in a purported securitization . . . [t]here is no evidence that the loan was ever securitized. Rather, the assignments show that the loan was assigned to BANA—with whom Plaintiff entered into two loan modifications with—and then Carrington. [This] demonstrates that [Medrano] cannot demonstrate a misrepresentation—or intent or subsequent detrimental reliance—to support her claims." (Doc. 15 at 5.) Notably, Medrano does not address this argument in her response to the motion to dismiss, instead dedicating the majority of her brief to a cut-and-paste recitation of the facts alleged in her complaint (Doc. 18 at 4-8) and then to a boilerplate recitation of case law addressing the Rule 8, Rule 9(b), and Rule 12(b)(6) pleading standards (*id.* 8-11, 13-16). This provides an independent basis for granting the motion to dismiss. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (quotation omitted).

In any event, Medrano's fraud theories lack merit. "[U]nder Arizona law, securitization of a loan is not material to its enforceability and does not affect the validity of the Deed of Trust." *Smith v. HSBC Bank*, 2017 WL 2082259, *3 (D. Ariz. 2017). *See also Diamond v. Wells Fargo Bank, N.A.*, 2015 WL 9691031, *4 (D. Ariz. 2015) ("[C]ourts have uniformly rejected the argument that securitization of a mortgage loan provides the mortgagor a cause of action.") (citation omitted); *Kuc v. Bank of Am., NA*, 2012 WL 1268126, *3 (D. Ariz. 2012) ("[T]he theory that securitization renders the Deed of Trust unenforceable has been repeatedly rejected."). Put simply, the "securitization of [a] loan d[oes] not excuse [a plaintiff] from making payments on the note" and misrepresentation or concealment to this effect is "not material" for the purposes of a fraud claim. *Smith*, 2017 WL 2082259, at *3.

Additionally, "[t]he only proof of authority the trustee's sales statutes require" to commence a foreclosure sale on a loan secured by a deed of trust "is a statement indicating the basis for the trustee's authority." *Hogan v. Washington Mut. Bank, N.A.*, 277 P.3d 781, 783 (Ariz. 2012). Thus, it is sufficient that a sale is "noticed by a trustee who had recorded

an instrument demonstrating that it was a successor in interest to the original trustee." *Id.* "[T]he deed of trust statutes impose no obligation on the beneficiary to 'show the note' before the trustee conducts a non-judicial foreclosure." *Id. See also Zadrozny v. Bank of New York Mellon,* 720 F.3d 1163, 1168 (9th Cir. 2013) ("Arizona law does not require possession of the note to effectuate a non-judicial foreclosure."). Here, the judicially noticeable documents show that CFS met its statutory duty because it recorded an instrument demonstrating its status as successor in interest to the original trustee. (Doc. 1 at 58.) Thus, the facts alleged in the complaint do not state a claim of fraud.

Accordingly, Counts I, III, and VI will be dismissed under Rules 9(b) and 12(b)(6). This makes it unnecessary to resolve the additional dismissal argument raised by BANA and Recontrust pertaining to the statute of limitations. (Doc. 15 at 5.)

C. **Count II**

BANA and Recontrust move under Rule 12(b)(6) to dismiss Count II, Medrano's claim for IIED, for a variety of reasons, including that, under Arizona law, a plaintiff cannot premise an IIED claim on an allegedly improper foreclosure attempt if the plaintiff was in default on the underlying loan. (*Id.* at 7.) Medrano does not address this argument in her response, let alone attempt to show it is incorrect. (Doc. 18 at 15-17 [failing to provide any argument specifically related to the IIED claim].)

Although Medrano's failure to respond provides an independent reason for granting the motion, the Court further concludes that BANA and Recontrust are correct on the merits. Under Arizona law, the tort of IIED has three elements. The defendant's conduct must be "extreme and outrageous," the defendant must "intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct," and the defendant's conduct must cause "severe emotional distress." *Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980).

In *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 578 P.2d 152 (Ariz. 1978), the Arizona Supreme Court held that a foreclosure, although "harsh" and "upset[ting]," was "still within the realm of acceptable business practice" and not "sufficiently extreme and outrageous to state a claim for relief" for purposes of IIED. *Id.* at 155. Accordingly,

courts in this District have routinely dismissed IIED claims premised on allegations of wrongful foreclosure. *See*, *e.g.*, *Bermudez v. DHI Mortg. Co. Ltd.*, 2018 WL 2008998, *2 (D. Ariz. 2018) (defendant's allegedly fraudulent foreclosure was not "conduct . . . so outrageous as to go beyond all possible bounds of decency"); *Earle v. Bank of Am., NA,* 2014 WL 1713764, *3 (D. Ariz. 2014) ("[I]t is not clear how foreclosure constitutes 'extreme' or 'outrageous' conduct in this case.").

Here, the complaint does not allege any facts suggesting the challenged foreclosure effort was extreme or outrageous. Accordingly, Count II will be dismissed.

D.  **Count IV**

BANA and Recontrust move under Rule 12(b)(6) to dismiss Count IV, Medrano's claim for "slander of title." BANA and Recontrust argue that (1) a plaintiff asserting such a claim must allege that the defendant published a false statement, yet the complaint doesn't plausibly allege that any of the recorded documents were false, (2) a plaintiff asserting such a claim must allege malice, yet the complaint contains no such allegation, (3) a plaintiff asserting such a claim must allege special damages, yet none are mentioned in the complaint, and (4) the only notice of sale they recorded was cancelled in 2012, meaning that it falls outside the four-year statute of limitations. (Doc. 15 at 7-8 & n.4.) Once again, Medrano fails to provide any responsive argument. (Doc. 18 at 15-17 [failing to provide any argument specifically related to the slander of title claim].)

Although Medrano's failure to respond provides an independent reason for granting the motion, the Court further concludes that BANA and Recontrust are entitled to dismissal on the merits. "The elements of slander of title . . . are the uttering and publication of the slanderous words by the defendant, the falsity of the words, malice and special damages." *City of Tempe v. Pilot Properties, Inc.*, 527 P.2d 515, 522 (Ariz. Ct. App. 1974). A plaintiff has not pled a prima facie case where she "does not specify what statements were false, but merely states that Defendants 'disparaged Plaintiffs' exclusive valid title by and through the preparing, posting, publishing, and recording of the documents . . . .'" *Cross v. Hamilton Mortg. Co.*, 2014 WL 11631716, *3 (D. Ariz. 2014). Instead, it must be clear "what aspects of the listed documents, if any, are false." *Id*.

Here, the complaint states, "Defendants . . . disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of forged and fraudulent real estate documents" and further that "Defendants knew or should have known that such documents were improper [because] Defendants had no right, title, or interest in the Property." (Doc. 1 at 20-21.) This complaint is virtually identical—in wording and effect—to the one found insufficient in *Cross*. Additionally, the complaint does not contain any facts (as opposed to formulaic conclusions) suggesting that BANA and Recontrust acted with a malicious mindset. (*Id.* at 21-22 ¶ 73.)

Accordingly, Count IV will be dismissed.

E. **Count V**

BANA and Recontrust move under Rule 12(b)(6) to dismiss Count V, Medrano's claim for "quiet title," because (1) they are merely the "*former* beneficiary and *former* trustee under the deed of trust" and thus cannot have any liability in a quiet-title action, (2) the claim is premised on the demonstrably false theory that Medrano's loan was securitized, and (3) Arizona law requires a party asserting a quiet-title claim to have first paid off or tendered the underlying debt, which Medrano hasn't done. (Doc. 15 at 2, 8-9, emphases added.) In her response, Medrano only addresses the third argument and ignores the first two. (Doc. 18 at 12, 15-18.)

Once again, although Medrano's failure to respond provides an independent reason for granting the motion, the Court further concludes that BANA and Recontrust are entitled to dismissal on the merits. "A quiet title action seeks a judicial determination of adverse claims in order to clear title of the disputed property." *Rogers v. Bd. of Regents of Univ. of Arizona*, 311 P.3d 1075, 1079 (Ariz. Ct. App. 2013). Such an action "may be brought by any one having or claiming an interest therein, whether in or out of possession, against any person or the state when such person or the state claims an estate or interest in the real property which is adverse to the party bringing the action." A.R.S. § 12-1101. "[I]f it appears there is an unsatisfied balance due a defendant-mortgagee, or his assignee, the court will not quiet the title until and unless he pays off such mortgage lien . . . ." *Farrell v. West*, 114 P.2d 910, 911 (Ariz. 1941). *See also Reader v. Bank of Am., NA,* 582 Fed.

App'x 719, 720 (9th Cir. 2014) ("The district court properly dismissed [the plaintiff's] quiet title claim because [the plaintiff] failed to allege facts showing that the loan has been repaid."). Here, BANA or Recontrust do not claim an adverse interest in Medrano's title and the complaint does not allege that Medrano has repaid (or tendered) the loan.

Accordingly, Count V will be dismissed.

IV. CFS's Joinder

Although CFS's standalone motion to dismiss (which sought to invoke A.R.S. § 33-807) has been stricken based on CFS's failure to comply with Local Rule 12.1(c), CFS also joined in the motion filed by BANA and Recontrust. (Doc. 16.)

CFS's joinder is not particularly helpful. For example, although CFS asserts that "all claims against it [should] be dismissed for the reasons set forth in Co-Defendants' Motion" (*id.* at 2), BANA and Recontrust sought dismissal in part because they are merely the *former* beneficiary and trustee and thus had nothing to do with the *current* foreclosure process, which was initiated by CFS. (Doc. 15 at 2.) It is difficult to understand how CFS could join in those arguments.

Nevertheless, as discussed above, BANA and Recontrust have identified additional reasons, applicable to all defendants, why all six causes of action in the complaint should be dismissed. Accordingly, CFS's joinder means it is entitled to dismissal, too.

V. Leave To Amend

In her response to the BANA/Recontrust motion to dismiss, Medrano asserts that she "believes many of the issues raised by this motion can be cured by an amendment to the complaint which focuses on irregularities in the mortgage servicing and foreclosure process rather than the underlying loan." (Doc. 18 at 3.)

This request will be denied. To be sure, "Rule 15 advises the court that leave [to amend] shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations and internal quotation marks omitted). Thus, "[n]ormally, when a viable case may be pled, a district court should freely grant leave to amend." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011). Also, "[a] district

- 14 -

court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Nevertheless, "liberality in granting leave to amend is subject to several limitations." *Cafasso,* 637 F.3d at 1058 (citation and internal quotation marks omitted). "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Id.*

Here, several of these considerations cut against a grant of leave to amend. The first is prejudice to the opposing party. As BANA and Recontrust note in their motion (Doc. 15 at 2), this case has all the hallmarks of a frivolous foreclosure-delay action. Second, and in a related vein, it doesn't appear Medrano is pursuing this action in good faith. Among other things, she ignored the multiple attempts by BANA and Recontrust's counsel to meet and confer about their contemplated dismissal motion and then failed to make a meaningful attempt, in her response to the motion, to address their arguments. Third, the Court has concerns about the futility of any future amendment, particularly because Medrano didn't purport to articulate what such an amendment would look like and judicially noticeable documents contradict many of the factual representations contained in the current iteration of Medrano's complaint.

Accordingly, **IT IS ORDERED** that:

(1) CFS's motion to dismiss (Doc. 10) is **stricken**;

(2) BANA's and Recontrust's motion to dismiss (Doc. 15), which was joined by CFS (Doc. 16), is **granted**; and

(3) This action is terminated and the Clerk of Court shall enter judgment accordingly.

Dated this 21st day of November, 2019.

Dominic W. Lanza
United States District Judge